## SPINER et al. v. WESTERN UNION TELEGRAPH CO.

No. 2518.

Court of Civil Appeals of Texas. Beaumont.
June 22, 1934.

Rehearing Denied June 30, 1934.

J. S. Bracewell and Quinton Wright, both of Houston, for plaintiffs in error.

John P. Bullington and Baker, Botts, Andrews & Wharton, all of Houston, and Francis R. Starke, of New York City, for defendant in error.

WALKER, Chief Justice.

J. B. Wheeler, Jr., a boy sixteen years old, was accidentally killed on August 20, 1931, while in the course of his employment with defendant in error, Western Union Telegraph Company. Long prior to his death, his employer had established a fund for the benefit of its employees, out of which payments were to be made to employees in case of sickness or injury; and in case of the death of an employee while on duty to certain dependents or relatives. At no time had any employee made any contribution whatever to this fund, but from its inception it was made up from funds contributed only by the employer. The plan for the administration of the fund provided that it was to be administered by a committee provided for in the plan. This committee was in the regular discharge of its duties at the time of the death of J. B. Wheeler, Jr. The plan provided further that, if any of the relatives of the deceased employee were partially dependent, death benefits "to such partially dependent relatives shall be such part of the total benefits as may be determined by the committee to be proportionate to the degree of dependents." We quote as follows from the plan: "In the event of the death of any employee, resulting from accidental injury on or after January 1, 1913, arising out of and in the course of employment by the company, there may be payable to the employee's beneficiaries, as provided in paragraph 3 of this section (subject, however, to the conditions elsewhere imposed in these regulations), a death benefit which shall equal three years' wages, as hereafter in this section defined, but which shall in no case exceed $5.000.00."

And again: "If there be no children or issue of deceased's children dependent upon the employee as aforesaid, then among such other relatives, if any, as were dependent upon the deceased employee for support at the time of his death, and in such proportions as the Committee may decide. If any of such other relatives were only partially dependent upon the deceased employee for support, the death benefit payable to such partially dependent relatives shall be such part of the total death benefit as may be determined by the Committee to be proportionate to the degree of dependence."

Section 4 of the plan provided for a committee of five, to be appointed by the board of directors of employer, to administer the plan and the fund; this section provided further that the committee "shall determine conclusively for all parties all questions arising in the administration of the Plan and the Fund." The deceased and his four younger brothers and sisters, who were the plaintiffs herein, at the time of his death were orphans, living with their grandfather, J. W. Harris, who intervened in the plaintiff's cause of action. Prior to the death of J. B. Wheeler, Jr., the grandfather, a resident of Harris county, adopted the five minor children in the manner prescribed by the statutes of this state. In addition to the five minor children, the grandfather had an invalid wife and two married daughters, who were also dependent upon him for support. Neither the grandfather nor the minor children nor the invalid wife nor the two married daughters owned any property whatever, and none of them had an independent income from any source whatever. At the time of his death, the deceased was working for defendant in error, making approximately $37 per month; the grandfather was working for a cemetery at a salary of $30 per month, and received and appropriated all the earnings of the deceased. As his wages and the wages of the deceased were not sufficient to support the family, the the grandfather was also drawing a pension from Harris county in partial support for his family. The four minor children, younger than the deceased, assisted in household duties and attended school. It thus appears

568

that the wages of the grandfather, the wages of the deceased, and the county pension constituted one common fund, which was used by the grandfather in support of himself, his wife, his two married daughters, and the five minor children. Immediately upon the death of J. B. Wheeler, Jr., defendant in error, in the manner provided for in the plan, investigated his death, and the committee provided by the plan for the distribution of the fund awarded to the grandfather, as a partial dependent, $617.46. The maximum death benefit under the plan for the death of J. B. Wheeler was $1,326.88. The grandfather was allowed a settlement upon a percentage found by dividing the wages of the deceased by the amount of the family income, as stated above. When defendant in error paid to the grandfather the sum of $617.46, he executed a release of all claims held by him against the fund. After the settlement with the grandfather, the minor brothers and sisters of the deceased made demand for the full amount of the benefits under the plan, which was refused by defendant in error. Thereupon they filed this suit by their next friend, Asa Brannan, claiming the entire benefit and, in the alternative, the sum of $709.42. Defendant in error answered, in effect, that the grandfather was the sole dependent relative of the deceased and was entitled to all the benefits accruing under the plan; that the committee, after investigation, had determined that the grandfather was entitled to $617.46, which amount it paid, and in consideration for such payment the grandfather executed a release against all further claims, and that the release was conclusive and binding upon all parties. By supplemental petition the plaintiffs attack the findings of the committee as arbitrary and legally fraudulent, alleging that such findings were contrary to the undisputed evidence before the committee.

The case was tried to the court without a jury, and judgment was rendered to the effect that plaintiffs and intervener take nothing. The next friend of the minors declined to perfect an appeal from the judgment of the lower court, whereupon plaintiff in error Charles B. Spiner was appointed their guardian. The appeal was duly perfected to the Galveston Court of Civil Appeals by the guardian and by the grandfather individually, and transferred to this court by orders of the Supreme Court.

The fund and its administration constituted a charitable enterprise. Thomas v. Postal Telegraph-Cable Co. (Tex. Com. App.)

65 S.W.(2d) 282. Defendant in error was under no legal liability whatever to create this fund, and in creating it had the legal right to reserve to itself or to a committee to be appointed by it the final decision of all matters relating to the administration both of the plan and fund. In unambiguous terms it reserved the power to "determine conclusively for all parties all questions arising in the administration of the Plan and the Fund." That this provision of the plan was legal in all its relations and binding upon the deceased and his dependents cannot be questioned. In the manner provided by the plan the committee secured the facts upon which it made its award, and, acting within the scope of its power, it construed the terms of the plan, and under its construction concluded that the facts entitled the grandfather to the sum awarded him, and that the minor brothers and sisters of the deceased had no claim upon the fund. We think that this decision of the committee was final and binding on all parties and is not subject to attack in the courts, in the absence of actual fraud or bad faith. A careful review of the evidence absolutely repels any suggestion of fraud or bad faith on the part of the committee in making its award. This conclusion has support in Clark v. New England Telephone & Telegraph Co., 229 Mass. 1, 118 N. E. 348, 349, and in Western Union Telegraph Co. v. Robertson, 146 Ark. 406, 225 S. W. 649. The very plan now in issue was construed by the Supreme Court of Arkansas in the Robertson Case. In Clark v. New England Telephone & Telegraph Co., supra, the plan was very similar to the plan now in issue. One of the principal differences between the two plans was that in the Clark Case the plan provided that "questions of fact arising in the administration of these regulations shall be determined conclusively for all parties by the committee," while in the case before us the plan provides that the committee shall "determine conclusively for all parties all questions arising in the administration of the Plan and the Fund." In the Clark Case the plaintiff made claim for death benefits under the plan as the father of the deceased employee. The committee executing the conditions of the plan found that the father was not dependent upon the deceased employee, and refused to pay him anything. Suit followed. In discussing the plan, the court said: "While the relation of the defendant to its employees in this respect is contractual, it is one of a peculiar nature. The defendant makes all the contributions to the funds by voluntary action and distributes it according

to a stipulated plan mutually accepted by it and the employees in way of beneficial relief to the latter. So far as that plan is executed in good faith, no sound reason appears why its terms should not govern the rights of the parties."

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.